UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                        Case No. 3:24-cr-105

         Plaintiff,

     v.                                              MEMORANDUM OPINION
                                                              AND ORDER

Cesar Ramirez-Velazquez,

         Defendant.

## I. INTRODUCTION

Defendant Cesar Ramirez-Velazquez moves to suppress all evidence obtained against him following a May 13, 2023 traffic stop, and he requests an evidentiary hearing in connection with this motion. (Doc. No. 28). He also seeks to dismiss Count 1 of the superseding indictment, which charges him with illegal reentry in violation of 8 U.S.C. § 1326. (Doc. No. 30). The government filed a brief in opposition to both motions and the request for a hearing, (Doc. No. 32), and Ramirez-Velazquez filed a brief in reply. (Doc. No. 36). For the reasons stated below, I deny Ramirez-Velazquez's request for a hearing and his motions.

## II. BACKGROUND

At 7:04 a.m. on the morning of May 13, 2023, Ohio State Highway Patrolman ("OSHP") Carl Gutman conducted a traffic stop of a vehicle traveling on US-250 after recording the vehicle's speed using a laser radar gun as 71 miles per hour – 16 miles per hour above the posted speed limit. (Doc. No. 28-2 at 1). The driver of the vehicle identified himself as Ramirez-Velazquez but

admitted he did not have photo identification or a passport with him. (*Id.*; Doc. No. 28-1). The OSHP contacted the United States Border Patrol Station located in Sandusky, Ohio, but there were no Border Patrol units available to respond to the traffic stop. (*See* Doc. No. 28-3 at 1). Gutman cited Ramirez-Velazquez for speeding and for driving with a suspended driver's license and issued him a summons to appear before the Huron Municipal Court. (Doc. No. 28-2). Ramirez-Velazquez pled no contest to both charges and was found guilty based upon the facts contained in the citations. (Doc. No. 32-1 at 1, 3-4).

Approximately ten months later, Border Patrol agents observed Ramirez-Velazquez's vehicle turn into a Norwalk, Ohio parking lot. (Doc. No. 28-3 at 1). They approached the vehicle after comparing a photo of Ramirez-Velazquez to the driver of the vehicle, and the driver confirmed he was Ramirez-Velazques. (*Id.*). Ramirez-Velazquez was arrested after acknowledging he did not have documentation that he was legally permitted to be in the United States. (*Id.* at 2). Further investigation revealed Ramirez-Velazquez had been removed from the United States twice previously. (*Id.*). Ramirez-Velazquez subsequently was indicted on one count of illegal reentry in violation of 8 U.S.C. § 1326, and two counts of possession of a fraudulent identification document in violation of 18 U.S.C. § 1546(a). (Doc. No. 24).

### III.   DISCUSSION

**A.   MOTION TO SUPPRESS**

A traffic stop implicates the protections of the Fourth and Fourteenth Amendments "because stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of those Amendments." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Those Amendments are not violated "'so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring.'" *United States v. Palomino*, 100 F.3d 446, 448 (6th Cir. 1996) (quoting *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (en banc)).

Ramirez-Velazquez asserts all information obtained following his May 2023 traffic stop should be suppressed because "evidence supports that the traffic stop was based on [his] race and not a violation of traffic law" and that evidence he was "speeding is nearly non-existent."  (Doc. No. 28 at 4).  But Ramirez-Velazquez fails to demonstrate that either of these contentions are true.

In support of his first argument, Ramirez-Velazquez relies upon a report authored by the American Immigration Council and the Advocates for Basic Legal Equality, Inc., (the "Report"), which, following a review of Border Patrol records from the Sandusky Bay station, argued that Border Patrol and its partner local law enforcement agencies engaged in "problematic tactics," including "the use of racial profiling and prolonged stops by local law enforcement under the pretext of contacting [Border Patrol] for 'identification assistance' to allow [Border Patrol] to conduct immigration checks."  (Doc. No. 28-4 at 5).  Ramirez-Velazquez contends the Report is proof that his May 2023 traffic stop was unlawful.  (Doc. No. 28 at 3-4).

At the outset, I note neither Ramirez-Velazquez nor the government discusses whether it would be appropriate for me to take judicial notice of the Report pursuant to Federal Rule of Evidence 201.  Under that Rule, a court "may judicially notice a fact that is not subject to reasonable dispute because it[] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Thus, while I may take judicial notice of the facts contained in Border Patrol records, I may not take judicial notice of the Report's conclusions regarding alleged racial profiling and Fourth Amendment violations.  *See, e.g., Overall v. Ascension*, 23 F. Supp. 3d 816, 824-25 (E.D. Mich. 2014) (citing *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 655 n.1 (6th Cir. 2005), and *Colvin v. Veterans Admin. Med. Ctr.*, 390 F. App'x 454, 456 (6th Cir. 2010), for the proposition that courts may take judicial notice of "government documents because their sources cannot reasonably be questioned") (further citation and internal quotation marks omitted).

Moreover, even if I were able to consider the Report's conclusions, they would not help Ramirez-Velazquez here. While the Report contends there is a pattern of conduct "strongly suggest[ive] that traffic stops are being used as random immigration checks," (Doc. No. 28-4 at 30), Ramirez-Velazquez's traffic stop occurred approximately 18 months after the close of the period from which the Report drew its statistical sample. (*See id.* at 9). Thus, the Report's underlying data is not contemporaneous to the traffic stop giving rise to this case. This argument lacks merit.

Second, Ramirez-Velazquez's claim that evidence he was "speeding is nearly non-existent" misstates the record. (Doc. No. 28 at 4). To the contrary, the only evidence in the record of the basis for the traffic stop is that Ramirez-Velazquez in fact was speeding. (*See* Doc. No. 32-1 at 3-5). Ramirez-Velazquez's complaints that there is not additional evidence further confirming the traffic violation are unavailing. Gutman had probable cause to stop Ramirez-Velazquez's vehicle after he observed that vehicle traveling in excess of the posted speed limit, in violation of Ohio law. *See, e.g., United States v. Hill*, 195 F.3d 258, 265 (6th Cir. 1999); *United States v. Wellman*, 185 F.3d 651, 655-56 (6th Cir. 1999). In light of this evidence, Ramirez-Velazquez fails to sustain his burden to show the traffic stop was unlawful.

A defendant is entitled to an evidentiary hearing on a motion to suppress "only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019) (quoting *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006)). A hearing is not required if there are no "issues of fact material to the resolution of the defendant's constitutional claim." *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996). Ramirez-Velazquez has made no such showing and, therefore, he is not entitled to an evidentiary hearing.

I deny Ramirez-Velazquez's motion to suppress.

4

B.   **MOTION TO DISMISS**

Ramirez-Velazquez moves to dismiss Count 1, arguing § 1326 violates his Fifth Amendment equal protection rights. (Doc. No. 30). He contends § 1326 has a disparate impact on individuals of Hispanic descent because recent data shows approximately 99% of defendants sentenced for violating § 1326 are Hispanic. (*Id.* at 3). Ramirez-Velazquez also asserts the statute has a disproportionate impact on individuals from Mexico because 7 of the 94 federal judicial districts reported that more than half of the defendants prosecuted for violating § 1326 were from Mexico. (*Id.*).

But evidence of a disproportionate adverse effect on a racial minority is not sufficient to constitute a violation of the Equal Protection Clause. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Ramirez-Velazquez also must show the statute was motivated by a "racially discriminatory intent or purpose." *Id.* To that end, Ramirez-Velazquez points to the Undesirable Aliens Act of 1929, which was enacted following a debate filled with racist invectives, as the legislative predecessor to § 1326 and argues that the current statute remains tainted by the discriminatory views that led to the passage of the Undesirable Aliens Act. (Doc. No. 30 at 3-8).

While the United States Court of Appeals for the Sixth Circuit has not yet fielded an Equal Protection challenge to § 1326, the Circuit Courts of Appeal to consider the question have uniformly upheld the statute as constitutional. *See, e.g., United States v. Ferretiz-Hernandez*, 139 F.4th 1286, 1292-97 (11th Cir. 2025), *cert. denied,* No. 25-6254, 2026 WL 79803 (U.S. Jan. 12, 2026); *United States v. Suquilanda*, 116 F.4th 129, 138-44 (2d Cir. 2024); *United States v. Amador-Bonilla*, 102 F.4th 1110, 1114-19 (10th Cir. 2024); *United States v. Viveros-Chavez*, 114 F.4th 618, 622-29 (7th Cir. 2024), *cert. denied,* 145 S. Ct. 1097, 220 L. Ed. 2d 405 (2025); *United States v. Sanchez-Garcia*, 98 F.4th 90, 96-102 (4th Cir. 2024); *United States v. Carrillo-Lopez*, 68 F.4th 1133, 1142-51 (9th Cir. 2023); *United States v. Barcenas-Rumualdo*, 53 F.4th 859, 863-67 (5th Cir. 2022); *United States v. Gonzalez-Nane*, No. 23-1418,

2024 WL 3439773, at *2-4 (3d Cir. July 17, 2024). These courts found that, "[t]he 1929 [Undesirable Aliens] Act notwithstanding, Congress's 1952 passage of § 1326 is entitled to a presumptive of legislative good faith" that the defendants in those cases failed to rebut. *Sanchez-Garcia*, 98 F.4th at 102. I agree with the reasoning of these courts and likewise conclude § 1326 does not violate the Equal Protection Clause.

Ramirez-Velazquez's reliance on Justice Sotomayor's concurrence in *Ramos v. Louisiana*, 590 U.S. 83 (2020), does not change my conclusion. (*See* Doc. No. 30 at 7). As Ramirez-Velazquez notes, in that case, Justice Sotomayor wrote "[w]here a law otherwise is untethered to racial bias—and perhaps also where a legislature actually confronts a law's tawdry past in reenacting it—the new law may well be free of discriminatory taint." *Ramos*, 590 U.S. at 115. But Justice Sotomayor's statement was dicta, as *Ramos* dealt a Sixth Amendment changes to laws in Louisiana and Oregon that permitted a criminal defendant to be convicted by a nonunanimous verdict. *See id.* at 87-88. The Supreme Court previously "rejected the argument that a new enactment can be deemed to be tainted by the discriminatory intent motivating a prior act unless legislators expressly disavow the prior act's racism." *Carrillo-Lopez*, 68 F.4th at 1151 (citing *Abbott v. Perez*, 585 U.S. 579, 604-06 (2018)).

I conclude Ramirez-Velazquez has failed to carry his burden to show § 1326 was enacted with a racially discriminatory motivation and, therefore, I deny his motion to dismiss.

## IV. CONCLUSION

For the reasons set forth above, I deny Defendant Cesar Ramirez-Velazquez's request for an evidentiary hearing and his motions to suppress and to dismiss. (Doc. Nos. 28 and 30).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

6